ADRIAN SCHOOL DISTRICT v MICHIGAN
PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM

Docket No. 107733. Argued May 6, 1998 (Calendar No. 10). Decided
July 28, 1998.

The Adrian School District and others brought an action in the Ing-
ham Circuit Court against the Michigan Public School Employees
Retirement System, seeking review of a 1993 declaratory ruling of
the Public School Employees Retirement Board that retirement
credit was to be given for worker's compensation received by
school district employees. The court, Carolyn Stell, J., affirmed.
The Court of Appeals, MARKEY, P.J., and McDONALD and M. J. TALBOT,
JJ., in an opinion per curiam, reversed in part, holding that retire-
ment system members were not entitled to retirement credit for
periods during which they received worker's compensation (Docket
No. 178195). The defendants appeal.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT,
and Justices CAVANAGH and BOYLE, the Supreme Court *held*:

Worker's compensation payments made by a school district
between March 13, 1992, and June 12, 1996, are sick leave pay for
retirement purposes.

1. The retirement board faithfully read the Legislature's intent in
interpreting MCL 38.1304(1); MSA 15.893(114)(1). Worker's com-
pensation benefits are functionally the same as sick leave pay. They
are compensation for illness or injury suffered by a public school
employee while on the job. To the extent that worker's disability
compensation benefits are intended to replace wages, they are a
form of remuneration. The use of the term "compensation" in the
retirement act suggests that a broad interpretation is appropriate in
crediting remuneration received by public school employees. In
addition, worker's compensation is not an expressly excluded form
of remuneration under the statute.

2. While this case was pending, the Legislature amended the def-
inition of "compensation" under the act to expressly include the
retirement board's interpretation. The action of the Legislature in
amending the definition must be interpreted as a ratification of the
position of the retirement board.

Reversed in part.

Justice TAYLOR, joined by Justices BRICKLEY and WEAVER, dissenting, stated that worker's compensation benefits are not "compensation" under the clear and unambiguous definition of that term in the Public School Employees Retirement Act.

The Legislature comprehensively defined the scope of "compensation." Noticeably absent from the definition is any mention of worker's compensation benefits or any invitation to expand the class of included items by use of a catchall suggesting similar items could be included. Thus, the Legislature demonstrated that it did not intend to include worker's compensation benefits within that definition. Additionally, it is apparent that the Legislature granted retirement credit for worker's compensation benefits in some circumstances and not in others.

Sick pay and worker's compensation are highly dissimilar in their effect on pension benefits. Worker's compensation payments may be awarded for an indeterminate time, while employer-employee-negotiated sick leave pay is a benefit that has a fixed maximum duration regardless of the nature or duration of an employee's illness. Whether sick leave is to be paid and the extent of the employer's liability is always calculable and finite, lending itself to actuarial certainty. The benefits and duration of worker's compensation have no comparable certainty. In MCL 38.1387; MSA 15.893(197) and MCL 38.1390; MSA 15.893(200), where the Legislature granted retirement credit for the time an employee received worker's compensation the worker's compensation benefit period is finite.

Although the 1996 amendment of the statute specifically included worker's compensation benefits within the definition of "compensation," the change in language does not support the conclusion that worker's compensation payments were included, from 1980 onward, within the definition of "compensation." While voting to give the 1996 amendment immediate effect, the Legislature did not include language indicating it wanted to give it retroactive effect. Retroactive application poses a fundamental contradiction with the purpose of the law itself: the protection of legitimate expectations.

219 Mich App 456; 556 NW2d 524 (1996) reversed in part.

*Thrun, Maatsch & Nordberg, P.C.* (by *Donald J. Bonato* and *Philip A. Erickson*), for the plaintiffs-appellees.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David L. Balas* and

*Kevin Thom,* Assistant Attorneys General, for the defendants-appellants.

Amicus Curiae:

*White, Przybylowicz, Schneider & Baird, P.C.* (by *Karen Bush Schneider*), for Michigan Education Association.

KELLY, J. We granted leave in this case to review a 1993 declaratory ruling of the Michigan Public School Employees Retirement Board. The board concluded that worker's compensation payments made to an injured employee, who was unable to work between March 13, 1992, and June 12, 1996,[1] constitute sick leave pay and thus are reportable compensation. We affirm that ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 1990, Ms. Bessie Traylor, age fifty-eight, fell and broke her hip while at work. At the time, she was employed by one of the plaintiff school districts and had earned 29.8 years of retirement service credit. She began receiving worker's compensation payments for her injury and, later, sought regular service retirement benefits from the Michigan Public School Employees Retirement System in lieu of disability benefits. The retirement system advised her that her worker's compensation payments were not considered "compensation" for purposes of calculating her retirement service credit.

---

[1] This time frame represents the period between the implementation of the Michigan Public School Employees Retirement Board decision in *Traylor v MPSERS,* and the effective date of 1996 PA 268.

As a consequence, Ms. Traylor would have received less than thirty years of service credit, greatly reducing her lifetime retirement benefits. Had she been given credit for the time she collected worker's compensation payments, she would have retired with 30.8 years' service and her full retirement package. Ms. Traylor contested the retirement system's denial of one year of retirement service credit and received an adverse ruling.

She then filed an exception with the Michigan Public School Employees Retirement Board. The board unanimously granted her request. It ordered her account credited for both the compensation and service time lost while she received worker's compensation benefits, beginning September 6, 1990, the date of her injury.

On March 13, 1992, the retirement board adopted a policy consistent with this decision and, later, notified the school districts.[2] The districts sought and received a hearing from the retirement board, which issued a declaratory ruling affirming its policy on July 30, 1993. It stated that employees were to receive retirement credit for the time they received worker's compensation payments due to an injury incurred in the employment of a member school district.

---

[2] A memorandum dated September 25, 1992, from Barbara Grover of the Michigan Public School Employees Retirement System advised member reporting units that

[t]he Michigan Public School Employees Retirement Board has acted to recognize Weekly Worker's Compensation payments as sick leave pay while absent from work and grant retirement credit for the time a member is receiving Weekly Worker's Compensation. Previously, school employees were not granted credit while receiving these payments.

The school districts appealed to the Ingham Circuit Court, which affirmed the declaratory ruling. They next appealed to the Court of Appeals, which reversed the circuit court's order.[3]

The Court held that retirement system members were not entitled to retirement service credit for periods during which they received worker's compensation benefits.[4] We granted defendants' application for leave to appeal.[5]

## II. ANALYSIS

The issue before us is whether the term "compensation" includes worker's compensation payments received for an injury suffered by a public school employee between March 13, 1992, and June 12, 1996.

### A

The definition of "compensation" under consideration in this case appeared at MCL 38.1304(1); MSA 15.893(114)(1):[6]

> "Compensation" means the remuneration earned by a member for service performed as a public school employee. If part of a member's remuneration is not paid in money, the retirement board shall fix the value of that part of the remuneration not paid in money. Compensation includes, on a current basis, investments made in a tax sheltered

---

[3] The Court affirmed the retirement board's findings with respect to worker's compensation payments made to retirement system members on or after June 12, 1996, pursuant to 1996 PA 268. It also found that a declaratory ruling by a state board is not a rule for the purpose of the rule-making requirements of the Administrative Procedures Act. These issues are not before this Court.

[4] 219 Mich App 456; 556 NW2d 524 (1996).

[5] 456 Mich 920 (1998).

[6] Amended by 1996 PA 268, MCL 38.1303a; MSA 15.893(113a).

annuity for a public school employee as remuneration for service under this act. The remuneration shall be valued at the amount of money actually paid into the annuity. Compensation includes all amounts deducted from the pay of a public school employee, including amounts deducted pursuant to the member investment plan. *Compensation includes* longevity pay, overtime pay, vacation pay, and holiday pay while absent from work, *sick leave pay while absent from work,* and items of deferred compensation, exclusive of employer contributions to the retirement system. Compensation does not include terminal payments for unused sick leave, annual leave, bonus payments, hospitalization insurance and life insurance premiums, other fringe benefits paid by and from the funds of employers of public school employees, and remuneration paid for the specific purpose of increasing the final average compensation. [Emphasis added.]

The Court of Appeals determined that the phrase "sick leave pay while absent from work" did not include worker's compensation payments made to a public school employee injured while at work. To support its conclusion, it cited two statutes that specifically enumerate instances when a member may receive credit for periods worker's compensation benefits are drawn.[7] The Court concluded that, had the Legislature intended that all members receive service credit while drawing worker's compensation benefits, the statutory exceptions would be rendered nugatory. We disagree.

---

[7] A member totally and permanently disabled by a work-related injury may receive service credit for the time worker's compensation benefits are paid if the member recovers and returns to work. MCL 38.1387; MSA 15.893(197). Also, if a member dies from a work-related injury for which the member receives worker's compensation benefits, the surviving spouse is entitled to a retirement allowance. It is computed as if the deceased member had retired on the day preceding the date of the member's death. MCL 38.1390; MSA 15.893(200).

In scrutinizing the declaratory ruling of the retirement board, we keep in mind the limits of judicial review. The Michigan Constitution provides that review of matters, including declaratory rulings, "shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law . . . ." Const 1963, art 6, § 28.

We will set aside the legal rulings of administrative agencies if they violate the constitution or a statute or contain a substantial and material error of law. MCL 24.306(1)(a), (f); MSA 3.560(206)(1)(a), (f); *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority*, 437 Mich 441, 450; 473 NW2d 249 (1991). Declaratory rulings are subject to the same judicial review as an agency's final decision or order in a contested case. MCL 24.263; MSA 3.560(163). We give them deference, provided they are consistent with the purpose and policies of the statute in question. *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 416; 565 NW2d 844 (1997).

In reviewing statutes, our primary goal is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). If a statute's wording is certain and unambiguous, we do not interpret it. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). However, if reasonable minds can differ regarding its meaning, then judicial construction is appropriate. *Yaldo v North Pointe Ins Co*, 457 Mich 341; 578 NW2d 274 (1998). In this case, we find that reasonable minds can differ regarding the statutory meaning of "compensation." Therefore, judicial construction is appropriate.

The question presented here is whether the retirement board wrongly extended the law. The board concluded that worker's compensation benefits are functionally the same as sick leave pay. It reasoned that the benefits are no less remuneration than is sick leave paid while the employee is absent from work. We agree. We find that the retirement board made a faithful reading of the Legislature's intent when it interpreted the statutory language.

As this Court stated in *McAvoy v H B Sherman Co,* 401 Mich 419, 437; 258 NW2d 414 (1977):

> The objective of the social legislation [worker's disability compensation legislation] is to provide the disabled worker with benefits during the period of his disability so that the worker and his dependents may survive (literally) the catastrophe which the temporary cessation of necessary income occasions. [Emphasis deleted.]

To the extent that worker's disability compensation benefits are intended to replace wages, they are a form of remuneration.

The United States Supreme Court has articulated the public policy objective underlying the furnishing of retirement benefits. It is to provide assistance to aged individuals who, having rendered long and valuable employment service, are no longer able to labor productively. *Helvering v Davis,* 301 US 619; 57 S Ct 904; 81 L Ed 1307 (1937). The retirement board's interpretation of the retirement act clearly supports the policy of providing financial security to public school employees who qualify for retirement.

The Legislature's use of the term "compensation" in the retirement act suggests that a broad interpretation is appropriate in crediting remuneration received by

public school employees. The Legislature could have chosen words having a nonrestrictive meaning. It could have selected the word "salary" as the basis for retirement credit. "Salary" has been defined as a periodic payment made to a person for official or professional services or for regular work. See *People v Lay*, 193 Mich 476, 488; 160 NW 467 (1916).

In this case, the plaintiff school districts argued, and the Court of Appeals agreed, that the appropriate rule of statutory construction is *expressio unius est exclusio alterius*.[8] They point out that worker's disability compensation benefits were not *expressly* listed as a form of "compensation" in subsection 4(1) of the retirement act. Therefore, they urge that the Legislature must have intended to exclude them from being treated as creditable compensation under the act.

This interpretation is inappropriate for two reasons. First, included in the items comprising "compensation" is "sick leave pay while absent from work." Worker's disability compensation benefits are a form of sick leave pay because they are compensation for illness or injury suffered by a public school employee while on the job. Accordingly, a reasonable interpretation of "sick leave pay" encompasses worker's disability compensation benefits.

Second, subsection 4(1) specifically identifies what types of remuneration are not included in the definition of compensation under the retirement act:

> Compensation does not include terminal payments for unused sick leave, annual leave, bonus payments, hospitalization insurance and life insurance premiums, other fringe benefits paid by and from the funds of employers of public

---

[8] The expression of one thing is the exclusion of all others.

school employees, and remuneration paid for the specific purpose of increasing the final average compensation. [MCL 38.1304(1); MSA 15.893(114)(1).]

Worker's disability compensation is not an expressly excluded form of remuneration. Hence, it must be viewed as falling within the expansive definition of compensation. Common sense dictates that it must be included in the phrase "sick leave pay while absent from work." The Legislature provided a list of inclusive phrases to outline types of remuneration included in the term "compensation," such as the phrase "sick leave pay while absent from work." It seems likely that it chose that terminology because, had it done otherwise, the retirement act would have to be amended *each time* a new form of compensation is negotiated.

The retirement board's interpretation of the retirement act is supported, also, by legislative history. In 1980, the chapters dividing school districts into two separate classes were consolidated. The consolidation provided benefits to all school districts that earlier had been available only to school employees in the Detroit public schools. A legislative analysis of Senate Bill 104, which became 1980 PA 300, provided the following:

> Outstate members would also gain the right to count time spent on sabbatical leave and time receiving worker's compensation as service credit. Both these benefits are now enjoyed by Detroit members. [Senate Legislative Analysis, SB 104, September 23, 1980.]

Thus, in making its declaratory ruling that disability payments are a form of sick leave pay that earn

retirement service credit, the retirement board gave effect to the Legislature's intent.[9]

In 1986, the retirement system issued a memorandum stating that worker's compensation benefits do not qualify as reportable compensation for retirement purposes. The school districts claim that the retirement board suddenly reversed its policy with its decision in *Traylor v MPSERS*. However, it must be noted that the 1986 memorandum provided the retirement system's interpretation of sick leave pay, not the retirement board's position. The retirement board governs and administers the retirement system, subject to the provisions of the retirement act. The retirement board's interpretation of "compensation" and resulting decision in *Traylor* superseded the retirement system staff's interpretation. *Traylor* provided the retirement board with its first opportunity to address this issue.

The public policy that allows agencies to establish new principles through contested case proceedings is premised on the fact that an agency cannot promulgate rules to cover every conceivable situation. The agency must interpret the statute it administers, and its interpretations are entitled to great weight. *Magreta v Ambassador Steel Co*, 380 Mich 513; 158 NW2d 473 (1968).

---

[9] We disagree with the assertion in the dissent that we are relying on legislative history as authority to abrogate the clear language of a statute. Rather, we provide the legislative analysis to demonstrate the retirement board's proper interpretation of the Legislature's intent to provide service credit for time spent receiving worker's compensation.

B

While this case was pending in the Court of Appeals, the Legislature amended the definition of "compensation" to expressly include the retirement board's interpretation. It defined the term "compensation" as

salary and wages and all of the following:

\*     \*     \*

Pay for vacation, holiday, and sick leave while absent from work. As used in this subdivision, "sick leave" includes weekly worker's disability compensation payments received for personal injury in the employ of and while employed by a reporting unit.[10]

The Court of Appeals opinion in this case maintained that the Legislature's action actually supported the school districts' position. On the contrary, the action of the Legislature in amending the definition of "compensation" must be interpreted as a ratification of the position of the retirement board. We have long and repeatedly held that, when a legislative amendment is enacted soon after a controversy arises regarding the meaning of an act, " ' "it is logical to regard the amendment as a legislative interpretation of the original act . . . ." ' " *Detroit v Walker*, 445 Mich 682, 697; 520 NW2d 135 (1994), quoting *Detroit Edison Co v Dep't of Revenue*, 320 Mich 506, 520; 31 NW2d 809 (1948), quoting 1 Sutherland, Statutory Construction (3d ed), § 1931, p 418. In this case, the Legislature's amendment of the retirement act clarifies its consistent intent.

---

[10] Subsection 3a(2)(f) of 1996 PA 268, MCL 38.1303a; MSA 15.893(113a).

Therefore, we find that the retirement board properly applied the statute when it issued its declaratory ruling.[11] Worker's compensation payments made between March 13, 1992, and June 12, 1996, are compensation, and retirement service credit should be granted for them.

### III. CONCLUSION

We reverse that portion of the Court of Appeals decision that reversed part of the declaratory ruling of the Michigan Public School Employees Retirement Board. We hold that weekly worker's compensation payments made between March 13, 1992, and June 12, 1996, are sick leave pay for retirement purposes.

MALLETT, C.J., and CAVANAGH and BOYLE, JJ., concurred with KELLY, J.

TAYLOR, J. (*dissenting*). This case presents a question of statutory construction. The precise issue is whether worker's compensation benefits should be included within the definition of "compensation" as codified in the Public School Employees Retirement Act, MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.* The resolution of this question affects whether a public school employee will be given "service credit," and thus an enhanced retirement benefit, for any time

---

[11] The dissent is misguided in its representation that we are giving the 1996 amendment by the Legislature retroactive effect. The dissent has lost sight of the issue in this case, which is whether the retirement board wrongly extended the law when it made its 1993 declaratory ruling. Our holding is that the board properly applied the statute in its declaratory ruling, thus affirming its determination that retirement service credit should be granted for the period March 13, 1992, to June 12, 1996. We do not give the 1996 amendment retroactive effect. Rather, we give effect to the retirement board's 1993 declaratory ruling.

spent off work while receiving worker's compensation benefits.

The Michigan Public School Employees Retirement Board determined, first in a contested case and then by declaratory ruling, that worker's compensation payments were in the nature of "compensation" and, accordingly, the time an employee receives worker's compensation counts toward earning retirement credit. On appeal, the Court of Appeals reversed the board's ruling, finding that worker's compensation is not "compensation" under the clear and unambiguous definition of that term in the act. I believe that the majority errs in reversing the decision of the Court of Appeals and reinstating the declaratory ruling of the board. At its core, this is a case where a compelling situation led the board to stray from the mandate of the statute. This Court has now, by ratifying that ruling, compounded the error by failing to fulfill its duty to apply the statute as written.

### FACTS

The genesis of the instant dispute was a contested case initiated by Bessie Traylor. Having worked as a school teacher for nearly thirty years, she planned to teach one more year before retiring. Unfortunately, at the outset of this last year of work she was injured on the job and was not able to teach for the remainder of the year. While off work she received worker's compensation benefits. On the date of her injury she had accrued approximately 29.8 years of service credit. Under the interpretation of the act employed by the Michigan Public School Employees Retirement System at the time, Ms. Traylor was not given service credit for the time spent off work while receiving

worker's compensation payments. As a result, at the end of the year she failed to accrue at least thirty years of service credit, and, not meeting that threshold, her retirement benefit was approximately $250 per month less than it would have been had she been given service credit for that period.

Ms. Traylor contested the retirement system's refusal to award her service credit for the time she was off work and received worker's compensation benefits. The board, giving the retirement act a reading that was unprecedented in that agency's construction of the statute, determined that Ms. Traylor should be given service credit for the time she received worker's compensation. The board's reasoning was that this benefit was in some sense similar to sick pay, and because sick pay falls under the statutory definition of "compensation," so should worker's compensation. This approach ensured that Ms. Traylor would receive the full pension she would have obtained had she not been injured.

Not surprisingly, this ruling caused those charged with implementing teacher retirements to inquire of the board how this ruling would affect others similarly situated. The board at that point chose a course consistent with the *Traylor* holding and indicated that it planned to implement this new treatment of worker's compensation benefits system wide for those who were paid worker's compensation benefits, commencing March 13, 1992, as well as for active public school employees who applied for service credit for periods before that date. This litigation ensued, and this Court has now affirmed the validity of the board's ruling. This means that teachers who received worker's compensation benefits from

March 13, 1992, through June 12, 1996, will automatically receive retirement credit for that period.

## STANDARD OF REVIEW

In reviewing the ruling of an administrative agency, our first duty is to determine whether the agency ruling is violative of the statute in question. That is, has the agency followed the law? If it has not, it must be overturned, because the mandate of the Legislature must be controlling over any contrary determination of the agency. MCL 24.306(1)(a); MSA 3.560(206)(1)(a); *Southfield Police Officers Ass'n v Southfield*, 433 Mich 168, 175; 445 NW2d 98 (1989); *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority*, 437 Mich 441, 450; 473 NW2d 249 (1991).

## DISCUSSION

As prefaced above, the controversy concerns the statutory definition of "compensation" as formerly codified at MCL 38.1304(1); MSA 15.893(114)(1). That subsection defined "compensation" for purposes of computing retirement credit:

"Compensation" means the remuneration earned by a member for service performed as a public school employee. When part of a member's remuneration is not paid in money, the retirement board shall fix the value of that part of the remuneration not paid in money. Compensation shall include, on a current basis, investments made in a tax sheltered annuity for a public school employee as remuneration for service under this act. The remuneration shall be valued at the amount of money actually paid into the annuity. Compensation shall include all amounts deducted from the pay of a public school employee. Compensation shall include longevity pay, overtime pay, vacation pay, and holiday pay while absent from work, sick leave pay while absent from

work, and items of deferred compensation, exclusive of employer contributions to the retirement system. Compensation shall exclude terminal payments for unused sick leave, annual leave, bonus payments, hospitalization insurance and life insurance premiums, other fringe benefits paid by and from the funds of employers of public school employees, and remuneration paid for the specific purpose of increasing the final average compensation.

As is apparent, "compensation" was broadly defined by the Legislature. The myriad types of benefits contractually conferred on the employee by the employer were included. The Legislature endeavored to list such payments as employer contributions to tax sheltered annuities, remuneration not paid in money, and finally all amounts deducted from the employee's paycheck as items falling within the definition of "compensation." However, the Legislature further refined the definition of "compensation" by removing certain items that would have fallen within the general definition absent specific exclusion. Thus, terminal payments for unused sick leave, annual leave, bonus payments, hospital and life insurance premiums, and other fringe benefits were excluded from the definition of compensation.

In this manner the Legislature comprehensively defined the scope of what is, and what is not, compensation. We do not have authority to expand, or contract, its definitions. The reason, formally, is the rule of statutory construction known as *expressio unius est exclusio alterius*, which means that the express mention of one thing is the exclusion of the other.[1] That is what the Legislature has done here.

---

[1] A good example of this rule, which makes its application clear, is found in United States Supreme Court Justice Antonin Scalia's book A

The statute defines compensation as remuneration earned by a public school employee, including investments made in tax sheltered annuities, amounts deducted from the pay of a public school employee, longevity pay, overtime pay, vacation pay, holiday pay, sick leave pay, and items of deferred compensation, exclusive of employer contributions to the retirement system. Noticeably absent is any mention of worker's compensation benefits or any invitation to expand the class of included items by use of a catch-all suggesting similar items could be included. This means the Legislature demonstrated that it did not intend to include worker's compensation benefits within that definition.[2]

Additionally, review of the entire act demonstrates that the Legislature considered the concept of providing service credit for the time an employee receives worker's compensation benefits and, in some circumstances, decided to grant it. MCL 38.1387; MSA

---

Matter of Interpretation (Princeton: Princeton Univ Press, 1997): "If you see a sign that says children under twelve may enter free, you should have no need to ask whether your thirteen-year-old must pay." *Id.*, p 25.

[2] I respectfully suggest that, although unexpressed, the majority has relied upon, and misapplied, the rule of statutory construction known as ejusdem generis, which applies where there are general terms modified by more specific terms. This also has been discussed by Justice Scalia in A Matter of Interpretation as a rule that means "of the same sort." He demonstrated this rule by this understandable example, "if someone speaks of using 'tacks, staples, screws, nails, rivets, and other things,' the general term 'other things' surely refers to other fasteners." Note 1 *supra*, p 26. That this rule has been misapplied by the majority can be seen in its opinion where it conflates sick leave pay with worker's compensation benefits even though there is no specific listing followed by a general category that could be held to encompass worker's compensation benefits.

Furthermore, to the extent that the majority relies on "legislative history" to support its conclusion, I make reference to my dissent in *Hagerman v Gencorp Automotive*, 457 Mich 720, 750; 579 NW2d 347 (1998). As explained therein, the Court errs by using a report generated by legislative staff personnel as authority to abrogate the clear language of a statute.

15.893(197) directs that employees will receive service credit for periods off work while receiving worker's compensation payments if, after becoming totally and permanently disabled because of a work-related injury, the member recovers from the disability and returns to work. In addition, MCL 38.1390; MSA 15.893(200) directs that if a member receives worker's compensation because of a work-related injury and subsequently dies from the work-related injury, the surviving spouse's retirement allowance will be computed by giving the deceased member service credit for the time up to the date of death. It is apparent then, that the Legislature granted retirement credit for worker's compensation benefits in some circumstances and not in others. This would seem to compel this Court to follow the pattern the Legislature has established or, failing to do so, to advance some reason to justify this departure from deference to the Legislature. No such reason has been offered by the majority. By deciding this case in this fashion, it is unfortunate but inescapable that we have destroyed the nuanced treatment of worker's compensation benefits that the Legislature mandated in §§ 87 and 90. I believe we clearly have no authority to do this and therefore should not.

In response to this statutory analysis, the majority is either silent or simply relies on the argument that sick leave pay and worker's compensation are functionally synonymous, and therefore we ought to treat them similarly because sick leave pay is specifically included within the statutory definition of compensation. Having already discussed how the majority has simply misread or disregarded the statute, I also find that the so called "similarity" approach will not bear

serious examination. The simple reason is that sick pay and worker's compensation are highly dissimilar in their effect on pension benefits. These differences should dissuade this Court in this case, which concerns pensions, from treating these distinct items as fungible.

It is of course the case that statutorily required worker's compensation payments can be awarded for an indeterminate amount of time, while employer-employee negotiated sick leave pay is a benefit that has a fixed maximum duration no matter the nature or duration of an employee's illness. That is, whether there even is sick leave pay, as well as the extent of the employer's liability for sick leave pay, is always calculable and finite. Sick leave pay then lends itself to actuarial certainty, a crucial matter when funding pensions. The benefits and duration of worker's compensation, however, have no comparable certainty. Clearly, no one conversant with pensions and their funding would lightly discount this distinction between open-ended versus defined benefits and call them "similar." Moreover, it seems that the Legislature understood this important distinction, which is central to pension funding, because the two instances in which the Legislature granted retirement credit for the time an employee received worker's compensation (the already discussed §§ 87 and 90) both are when the worker's compensation benefit period is finite. In § 87, the period of credit is the period from total disability to recovery and return to work. In § 90, it is from time of disability to death from the work-related injury. This means then that the Legislature manifested, by the fact that it only treated time while receiving worker's compensation as a retire-

ment credit when the time was finite, that it did not in any other situation think that worker's compensation and sick leave pay (which is always finite) were similar. This distinction should be recognized by this Court and reflected in our handling of this matter.

Thus, the cornerstone of the majority's analysis, the equating of worker's compensation to sick leave pay, is flawed as a conceptual and practical matter from the outset and should be spurned. Indeed, aware of these dissimilarities, it should cause us, as a matter of comity with the Legislature, to respectfully conclude that the Legislature for these very reasons did not include worker's compensation within the definition of compensation as defined in 1980.[3] We should do this because it is the Legislature that has authority to draw distinctions so as to narrow or widen the scope of legislation. This power derives from the grant of legislative authority given expressly to the Legislature in our constitution. Const 1963, art 4, § 1. Lamentably, the majority has not shown such deference.

Next, I turn to the import of the 1996 amendment of the statute. As is outlined in the majority opinion, the Legislature amended the definition of compensation in 1996 to specifically include worker's compensation benefits within the definition of compensation. MCL 38.1303a(2)(f); MSA 15.893(113a)(2)(f). The majority holds that this was a mere clarification of the earlier statute and as such a ratification of the board's ruling. The thrust of this analysis is to reinforce the majority's assertion that the earlier act should be read as having compensation include credit

---

[3] See *O'Brien v Hazelet & Erdal*, 410 Mich 1, 17; 299 NW2d 336 (1980), and *Shavers v Attorney General*, 402 Mich 554, 614; 267 NW2d 72 (1978).

for worker's compensation. The argument that this amendment is a clarification is, in my view, untenable.

It is recognized that a change by amendment in the phraseology of a statute is presumed to indicate, in the absence of a manifest intent to the contrary, a legislative purpose to change the meaning. *Detroit Edison Co v Dep't of Revenue*, 320 Mich 506, 518; 31 NW2d 809 (1948). We deal with that situation here and should understand that a change in meaning was intended. Further, it is axiomatic when ascertaining legislative intent, that the relevant intent " 'is the one entertained by the legislature at the time of the passage of the act, and not the intent expressed by a subsequent amendment. . . . [T]o interpret the subsequent amendment as an indication of the legislature's original intent would be mere speculation, not judicial construction.' " *Id.*, p 519, quoting *Iron Street Corp v Unemployment Compensation Comm*, 305 Mich 643, 655; 9 NW2d 874 (1943).

Accordingly, in compliance with the doctrines governing the effect of amendments, the 1996 change in statutory language does not support the conclusion that worker's compensation payments were included, from 1980 onward, within the definition of "compensation" because we should presume that the change in statutory language effected a change in meaning.

However, even if one adopts the view that the 1996 amendment is a clarification, I do not believe it can be given retroactive effect. The Legislature, while voting to give the 1996 amendment immediate effect, did not include language indicating it wanted to give it retroactive effect. This means retroactive effect should not be given. As we said in *Hughes v Judges'*

*Retirement Bd*, 407 Mich 75, 84; 282 NW2d 160 (1979), "[T]his Court has not countenanced retrospective application of statutory enactments absent legislative direction to do so . . . ."

The fact that the Legislature in 1996, after considering effective dates, did not give the statute retroactive effect should be seen as determinative. The majority, however, with little analysis and indeed almost casualness, gives it retroactive effect. This demonstrates that the majority, unlike the Legislature, apparently fails to adequately appreciate the inherent injustice of retroactive legislation. That injustice is that retroactivity poses a fundamental contradiction with the purpose of the law itself: the protection of legitimate expectations. As I have previously discussed "the concept and purpose of law itself . . . is to enable our citizens, and those who advise them, to know prospectively what the law is and thus to be able to conform their conduct to what it requires." *Hagerman v Gencorp Automotive*, 457 Mich 720, 757; 579 NW2d 347 (1998) (Taylor, J., dissenting). This deprivation of legitimate expectations has happened to the plaintiff and other school boards similarly situated.

Michigan's school boards have relied in the past on the well understood meaning of the act. They have budgeted and contracted with their employees with the legitimate expectation that, unlike sick leave pay and other forms of statutory "compensation," no pension funding liability was tied to worker's compensation benefits. Now the majority imposes that responsibility, by ruling, in the face of the language and structure of the statute, as well as the manifested intent of the enacting Legislature, that the 1980 legislation included from its inception worker's compensa-

tion payments within the definition of "compensation." The problems this ruling will surely precipitate could have been avoided if the majority had simply relied on basic doctrines of statutory construction as did the Court of Appeals. Had we done so we, as the Court of Appeals before us, would have reversed the decision of the board. This we should have done. I would affirm the decision of the Court of Appeals.

BRICKLEY and WEAVER, JJ., concurred with TAYLOR, J.