KORZOWSKI v POLLACK INDUSTRIES

Docket No. 170306. Submitted May 10, 1995, at Detroit. Decided September 1, 1995, at 9:40 A.M.

Ronald A. Korzowski sought unemployment benefits when his employment at Pollack Industries was terminated after he refused to submit to a drug test. A hearing referee determined that the claimant's refusal amounted to misconduct under the Michigan Employment Security Act and that, therefore, he was disqualified from receiving benefits. The Michigan Employment Security Commission Board of Review affirmed the referee's decision on the basis that the evidence established that the claimant was intoxicated at work, which provided grounds for discharge. The Wayne Circuit Court, Michael J. Talbot, J., affirmed the decision of the MESC Board of Review. The claimant appealed.

The Court of Appeals *held:*

The finding of the MESC Board of Review that the claimant was intoxicated while at work was not supported by competent, material, and substantial evidence that he actually was impaired. Evidence that the claimant had red, glassy eyes, even together with the fact that a witness testified that he observed the claimant smoke marijuana, was insufficient to prove intoxication. There was no evidence showing that the claimant's physical or mental faculties were disturbed by his alleged use of marijuana. The evidence presented by the employer was not more than a mere scintilla. The decision disqualifying the claimant from receiving unemployment benefits must be reversed and the matter must be remanded to the MESC Board of Review for consideration of the claimant's argument that his refusal to consent to a drug test was not "misconduct" as contemplated by the Michigan Employment Security Act.

Reversed and remanded.

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 2, 13, 14, 97, 98.

Alcoholism or intoxication as ground for discharge justifying denial of unemployment compensation. 64 ALR4th 1151.

Employee's use of drugs or narcotics, or related problems, as affecting eligibility for unemployment compensation. 78 ALR4th 180.

1. Unemployment Compensation — Michigan Employment Secu-
     rity Act.

    The Michigan Employment Security Act is remedial and was
     designed to safeguard the general welfare through the dispen-
     sation of benefits intended to ameliorate the disastrous effects
     of involuntary unemployment; while the act generally is to be
     construed liberally, those provisions regarding disqualification
     from benefits are to be construed narrowly (MCL 421.1 *et seq.*;
     MSA 17.501 *et seq.*).

2. Unemployment Compensation — Intoxication — Disqualifica-
     tion from Receiving Benefits.

    An individual discharged from employment for misconduct con-
     nected with the individual's work or for intoxication while at
     work is disqualified from receiving benefits under the Michigan
     Employment Security Act; to prove intoxication, the evidence
     must show that the individual's physical or mental faculties
     were disturbed by the use of an intoxicating substance (MCL
     421.29[1][b]; MSA 17.531[1][b]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Mark F. Davidson,* Assistant Attorney General, for the Michigan Employment Security Commission.

*Robb, Messing, Palmer & Dignan, P.C.* (by *Charles W. Palmer*), for Ronald A. Korzowski.

Before: Hood, P.J., and Sawyer and E. J. Grant,* JJ.

Per Curiam. Claimant appeals as of right a circuit court's order affirming a decision of the Michigan Employment Security Commission (MESC) Board of Review to deny claimant unemployment benefits. We reverse.

Claimant was discharged from his employment with Pollack Industries on May 9, 1991. On that date, claimant and two other employees of Pollack Industries, Gordon Yoos and Greg Clark, had lunch at Clark's home. At the MESC appeal hear-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing, Yoos testified that he observed claimant smoking marijuana during that lunch. Clark testified at the hearing that he and either Yoos or claimant had smoked marijuana, but could not be sure who it was that smoked with him.

All three men were individually called into the office of the personnel manager, Barry Henderson, and questioned about their lunch. When Yoos went into Henderson's office, Ronald Pollack and Connie Martin, the union steward, were also present. Yoos and Clark testified that they were asked whether they were under the influence of any substance. During his meeting, Yoos consented to a drug test. Clark was also asked to take a drug test during his meeting, but he refused. After this initial refusal, Clark went home. A few hours later, he was contacted by Henderson, who told Clark to take the test and he would not be terminated. Clark told Henderson he had smoked marijuana, and Henderson told him to take the test. Clark consented to the test.

Clark testified that during the meeting he was told that he would not be terminated in the event he consented to the drug test and the result was positive. However, Clark was told that if the drug test result was positive he would be required to participate in the employee assistance program.

Because he observed that claimant had red, glassy eyes when claimant was questioned that afternoon, Henderson suspected that claimant was under the influence of some substance. At the MESC appeal hearing, claimant testified that he was not under the influence of any substance when he was called into Henderson's office. After testifying that, to his knowledge, his eyes were not red and glassy, he explained that, if they were, it was because of his job in the welding shop and the cause was welding smoke. Martin, the union stew-

ard, testified that claimant was told that if he consented to a drug test and admitted using marijuana he would not lose his job. However, if he refused to consent to a drug test he would be terminated.

In Henderson's office, claimant refused to give an answer to the request to submit to a drug test until he spoke to his lawyer, which he was permitted to do. While talking with his lawyer, claimant asked Martin if there was a contract provision permitting his employer to request employees to take a drug test. Upon telling his lawyer that Martin indicated that there was no such provision in the contract, claimant followed his lawyer's advice to refuse consent. Henderson told claimant to return his things and leave the premises, but when Martin asked Henderson if claimant was discharged, Henderson told her he was not. Claimant asked Henderson when he should report back to work. Henderson told claimant to call him later and they would discuss it.

Henderson told Martin that she should try to contact claimant and tell him that if he consented to the drug test before 8:00 P.M., he would not be discharged. Martin recalled that she contacted claimant with this information. Claimant testified that when he called Henderson at 4:00 P.M., Henderson told him that he had until 8:00 P.M. to consent to the test or he would be terminated. After refusing consent, claimant was terminated.

The contract between the union and Pollack Industries did not contain a provision allowing the employer to ask employees to consent to a drug test. However, the contract did give the employer the right to establish rules and procedures governing employee conduct. While Martin testified that the union and Pollack Industries had entered into an oral agreement regarding drug testing, she

could not remember whether that had been before or after May 9, 1991. Henderson testified that no final, written policy had been adopted as of that date. According to Henderson, in November 1990, the union and Pollack Industries had agreed that if the employer suspected that an employee was under the influence of a substance, the employee would be tested. If the test revealed a positive result for drugs, the employee would be required to participate in the employee assistance program. Providing the employee consented to this procedure, no disciplinary action would be taken.

Henderson testified that claimant was terminated for refusing to submit to the drug test and participate in the employee assistance program. He also indicated that during the meeting with claimant, although claimant denied being under the influence of any substance, his personal observation that claimant had red, glassy eyes led him to the conclusion that claimant was under the influence of some substance. Henderson acknowledged that the substance use did not occur on Pollack Industries' premises, but indicated that he concluded that the employees were under the influence while on the premises.

The hearing referee concluded that claimant's refusal to submit to the drug test amounted to misconduct under § 29(1)(b) of the Michigan Employment Security Act, MCL 421.29(1)(b); MSA 17.531(1)(b). Because claimant's actions amounted to statutory misconduct, the referee disqualified claimant from receiving unemployment benefits. The MESC Board of Review affirmed the referee's decision, but on a different basis. It found the evidence established that claimant was intoxicated at work, which provided grounds for discharge.

Claimant appealed to the Wayne Circuit Court,

which affirmed the board's decision. The circuit court judge stated:

> [My function] is limited to a determination of whether the facts before the MESC are supported by competent material and substantial evidence on the whole record. I did not have the ability to evaluate the credibility of the witnesses who were before that referee. He was able to evaluate them.
>
> There was sufficient evidence, in my judgment, that would allow for his findings. My review is extremely limited, and when it comes to the question of credibility, that's not my function. I affirm.

Claimant appeals from this decision.

Claimant's first argument on appeal is that the finding of the MESC Board of Review that he was intoxicated while at work was not supported by competent, material, and substantial evidence that he was actually impaired. We agree.

We review a decision by the MESC Board of Review to determine whether it is contrary to law or not supported by competent, material, and substantial evidence on the whole record, in which case we will reverse that decision. MCL 421.38(1); MSA 17.540(1); *Vanderlaan v Tri-Co Community Hosp,* 209 Mich App 328, 331; 530 NW2d 186 (1995); *Tomei v General Motors Corp,* 194 Mich App 180, 183-184; 486 NW2d 100 (1992). Substantial evidence is that evidence which reasonable minds would accept as adequate to support a decision. It is more than a mere scintilla but less than a preponderance of the evidence. *In re Kurzyniec Estate,* 207 Mich App 531, 537; 526 NW2d 191 (1994).

This Court has previously recognized that the Michigan Employment Security Act is remedial and was designed to "safeguard the general welfare through the dispensation of benefits intended

to ameliorate the disastrous effects of involuntary unemployment." *Tomei, supra* at 184. Thus, while the act generally is to be liberally construed, those provisions regarding disqualification from benefits are to be construed narrowly. *Id.* Moreover, the employer bears the burden of proving misconduct. *Id.* at 185; *Cooper v Univ of Michigan,* 100 Mich App 99, 103; 298 NW2d 677 (1980).

The Michigan Employment Security Act provides that an individual shall be disqualified for benefits if the individual "[w]as discharged for misconduct connected with the individual's work or for intoxication while at work . . . ." MCL 421.29(1)(b); MSA 17.531(1)(b). The term "intoxication" is not defined in the statute. Therefore, we give the term its plain and ordinary meaning. *Trumble's Rent-L-Center, Inc v Employment Security Comm,* 197 Mich App 229, 233-234; 495 NW2d 180 (1992).

"Intoxication" is defined as "the abnormal state induced by a chemical agent" or "the quality or state of being drunk." *Webster's Third New International Dictionary, Unabridged Ed* (1964). As stated in Black's Law Dictionary (6th ed), "intoxication"

> comprehends [a] situation where, by reason of taking intoxicants, an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in the manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions.
>
> A disturbance of mental or physical capacities resulting from the introduction of substances into the body. [Citations omitted.]

Claimant argues that impairment must be shown in order to disqualify a person from receiv-

ing unemployment benefits on the basis of intoxication at work. However, we resolve this issue simply by finding evidence of red, glassy eyes, even together with the fact that a witness testified that he observed claimant smoke marijuana, insufficient to prove intoxication. There is no evidence to show that claimant's physical or mental faculties were disturbed by his alleged use of marijuana. We cannot say that the evidence presented by claimant's employer was more than a mere scintilla. We find that the MESC Board of Review decision that claimant was intoxicated at work was not supported by material, competent, and substantial evidence. The decision disqualifying claimant from receiving unemployment benefits is reversed.

Claimant raises an additional argument that his refusal to consent to a drug test was not "misconduct" as contemplated by the statute. The MESC Board of Review did not base its decision on claimant's refusal to consent to the drug test, although the MESC hearing referee did and claimant's employer indicated that claimant was terminated on this basis. Because this issue was not reviewed by the MESC Board of Review, we decline to address it and remand it to the MESC Board of Review.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.