MICHIGAN EDUCATION ASSOCIATION POLITICAL ACTION
COMMITTEE v SECRETARY OF STATE

Docket No. 204959. Submitted October 6, 1999, at Lansing. Decided June
13, 2000, at 9:05 A.M.

The Michigan Education Association Political Action Committee peti-
tioned the Ingham Circuit Court to review the final order issued by
a hearing officer with the hearing division of the Michigan Depart-
ment of State in which the petitioner was held to have violated a
provision of the Michigan Campaign Finance Act (MCFA), MCL
169.201 et seq.; MSA 4.1703(1) et seq. The respondent, the Secretary
of State, had filed a complaint alleging that the petitioner's transfer
of funds to other political action committees (PACS) for the purpose
of paying legal expenses related to election recounts involving five
candidates for the Michigan House of Representatives constituted a
violation of subsection 1 of § 44 of the MCFA, MCL 169.244(1); MSA
4.1703(44)(1). At the administrative hearing, the petitioner stipu-
lated that it had made contributions to three other PACS, that on the
same day that it made its contributions the recipient PACS had made
contributions in varying amounts to the candidate committees of
the five candidates who had been involved in recounts by paying
outstanding legal expenses incurred in the recounts, and that the
total of the contributions made by the other PACS for the legal
expenses equaled the total that the petitioner contributed to those
other PACS. The hearing officer found that the evidence supported a
reasonable inference that the petitioner had given the money to the
other PACS under an agreement that those PACS would transfer those
funds to the committees of the candidates involved in the recounts,
held that the transfer was a contribution within the meaning of
subsection 44(1) because it was a donation of money made for the
purpose of influencing the election of a candidate, and, accord-
ingly, held that the transfer of funds violated the provisions of sub-
section 44(1). The circuit court, David L. Jordon, J., reversed the
decision of the hearing officer, holding that donations associated
with recounts are not contributions within the meaning of the MCFA
and that the hearing officer's finding that the petitioner had an
agreement or arrangement with the other PACS to transfer the funds
to the candidate committees was not supported by any evidence.
The respondent appealed by leave granted.

The Court of Appeals *held*:

1. Subsection 44(1) of the MCFA prohibits the giving of a contribution to another person where there is an arrangement or agreement that the contribution will then be transferred to a particular candidate committee. Subsection 4(1) of the MCFA, MCL 169.204(1); MSA 4.1703(4)(1), defines "contribution" as a "donation of money . . . made for the purpose of influencing the . . . election of a candidate." Subsection 5(2) of the MCFA, MCL 169.205(2); MSA 4.1703(5)(2), defines "election" as "a primary, general, special, or millage election held in this state."

2. Because reasonable minds could differ concerning whether a monetary donation associated with a recount is encompassed within the meaning of "contribution" as that term is used in the MCFA, judicial construction is appropriate. Because a recount is a procedure that is used to correct fraud or mistakes that may take place in an election and is not, itself, a type of election, the failure of the Legislature to list a recount among the types of elections set forth in subsection 5(2) is not dispositive of the question whether monetary donations associated with recounts can be donations made for the purpose of influencing an election of a candidate within the meaning of subsection 4(1).

3. The purpose of a recount is to determine whether the initial count of the ballots will stand. Clearly, the intent of a recount is to influence the outcome of the election for which the recount is sought. A financial contribution used to pay for a recount may affect the outcome of an election and, thus, may be said to be for the purpose of influencing the election of a candidate within the meaning of subsection 4(1).

4. A circuit court may overturn the findings of fact made by a hearing officer in an administrative hearing only when those findings are not supported by substantial evidence on the whole record. Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision. Even if a circuit court would have reached a contrary conclusion if it had been in the hearing officer's place, the court is nevertheless bound to affirm the decision of the hearing officer if that decision is sufficiently supported. Here, there was sufficient evidence to support the hearing officer's finding that the petitioner made its contributions to the other PACs pursuant to an agreement or arrangement that the funds would then be transferred for the purpose of paying for legal services associated with recounts in the elections of particular candidates. Accordingly, the circuit court erred in reversing the hearing officer's order on the basis that the hearing officer's

decision was not supported by substantial evidence on the whole record.

Reversed.

McDonald, J., dissenting, stated that the circuit court's decision should be affirmed because a recount is not an election and, accordingly, monetary donations associated with recounts cannot be considered to be a contribution within the meaning of subsection 4(1) of the MCFA.

Elections — Recounts — Contributions.

The recount of the ballots cast in an election is encompassed within the definition of an election as defined in the Michigan Campaign Finance Act; a donation of money to underwrite the costs associated with a recount is for the purpose of influencing an election and is thus a contribution within the meaning of the Michigan Campaign Finance Act (MCL 169.204[1], 169.205[2]; MSA 4.1703[4][1], 4.1703[5][2]).

*Miller, Canfield, Paddock and Stone, P.L.C.* (by *Michael J. Hodge* and *Clifford T. Flood*), for the petitioner.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary P. Gordon* and *Michael E. Moody*, Assistant Attorneys General, for the respondent.

Before: Hoekstra, P.J., and McDonald and Meter, JJ.

Meter, J. Respondent appeals by leave granted from the circuit court's order reversing a decision by an administrative hearing referee, who concluded that petitioner had violated a provision of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.*; MSA 4.1703(1) *et seq.* We reverse the trial court's order and reinstate the administrative decision.

I. FACTUAL BACKGROUND

The parties do not dispute the relevant facts. After the 1992 general election, five candidates for the Michigan House of Representatives were involved in recounts. Together, they incurred $20,711.54 in legal expenses for recount-related services provided by the law firm of Miller, Canfield, Paddock and Stone, P.C. (Miller Canfield). As of July 12, 1994, Miller Canfield had not yet been paid for these services. On July 12, 1994, petitioner's administrator, Allan Short, received a telephone call from the Office of the Speaker of the State House of Representatives. The individual placing the call, whose identity is unknown, requested that petitioner contribute a total of $20,711.54 to three political action committees (PACs). Specifically, the individual requested a $16,598.87 contribution for the Rebuild the Majority Fund, a $2,800.99 contribution for the Democratic Grass Roots Committee, and a $1,311.68 contribution for the U.P. Victory Fund. After Short ascertained that the requested contributions, together, would not exceed the amount of money that petitioner had designated for contributions to House Democrats, he authorized the issuance of checks in the requested amounts. Short testified that he did not know how the three PACs planned to use the money and that his only concern was that the contributions did not exceed the amount of money petitioner had designated for contributions to House Democrats.

Petitioner made contributions in the requested amounts to the three PACs on July 12, 1994. That same day, the three PACs made various in-kind contributions to the candidate committees of the five House candi-

dates involved in the recounts. Specifically, the Rebuild the Majority Fund paid $16,598.87 to Miller Canfield for legal expenses incurred by four of the candidates, the Democratic Grass Roots Campaign paid $2,800.99 to Miller Canfield for legal expenses incurred by three of the candidates, and the U.P. Victory Fund paid $1,311.68 to Miller Canfield for legal expenses incurred by one of the candidates. The total amount transferred to Miller Canfield by the PACS was $20,711.54, the same amount that petitioner contributed to the three PACS.

In April 1996, respondent filed a notice of alleged violation in which it contended, among other things, that petitioner violated subsection 44(1) of the MCFA, MCL 169.244(1); MSA 4.1703(44)(1), by transferring money to the three PACS with the agreement or arrangement that the PACS would then transfer the money to particular candidate committees. An administrative hearing regarding the alleged violation took place in July 1996. Petitioner contended that it could not be held liable under subsection 44(1) of the MCFA because (1) funds donated for recounts are not "contributions" as defined by the MCFA, since recounts are not "elections" within the meaning of the act; and (2) respondent failed to show that petitioner had an agreement with the PACS to transfer the money to the candidate committees. The hearing referee concluded that (1) recount-related donations are indeed "contributions" governed by the MCFA, because they influence the election of candidates, and (2) the "money trail" established that petitioner violated subsection 44(1) of MCFA by transferring funds to the PACS with the agreement or arrangement that the funds would then be transferred to the candidate committees.

Petitioner sought review of the referee's decision in the circuit court. Following a June 1997 hearing, the court held that donations associated with recounts are not "contributions" under the MCFA because (1) the MCFA does not mention recounts, and (2) recounts do not involve influencing voters to vote in a particular way. The court further held that respondent failed to present any evidence that petitioner had an agreement or arrangement for the funds it transferred to the PACs to then be transferred to the candidate committees. Accordingly, the circuit court reversed the hearing referee's decision. Respondent now appeals this reversal.

## II. DONATIONS ASSOCIATED WITH RECOUNTS ARE "CONTRIBU- TIONS" UNDER THE MCFA

Respondent first argues that the circuit court erred in concluding that donations associated with recounts are not "contributions" as defined by the MCFA and are therefore not encompassed by the MCFA. Whether the MCFA governs recount-related donations is a question of statutory interpretation. This Court reviews questions of statutory interpretation de novo. *Benedict v Dep't of Treasury*, 236 Mich App 559, 563; 601 NW2d 151 (1999). However, "[a]lthough it remains our responsibility to determine the meaning of the statute, we give 'appropriate deference' to the agency's interpretation." *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998). We "ordinarily defer[] to the construction of a statute by the agency charged with applying it unless the interpretation is 'clearly wrong.' " *Id.*

Here, plaintiffs allegedly violated MCL 169.244(1); MSA 4.1703(44)(1), which states:

A *contribution* shall not be made by a person to another person with the agreement or arrangement that the person receiving the contribution will then transfer that contribution to a particular candidate committee. [Emphasis added.]

The term "contribution" is defined in MCL 169.204(1); MSA 4.1703(4)(1):

"Contribution" means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or *anything of ascertainable monetary value, or a transfer of* anything of ascertainable monetary value to a person, *made for the purpose of influencing the nomination or election of a candidate*, or for the qualification, passage, or defeat of a ballot question. [Emphasis added.]

Election, in turn, is defined as follows:

"Election" means a primary, general, special, or millage election held in this state or a convention or caucus of a political party held in this state to nominate a candidate. Election includes a recall vote. [MCL 169.205(2); MSA 4.1703(5)(2).]

Respondent contends that even though the MCFA does not employ the term "recount" in defining the term "election," the MCFA nonetheless encompasses funds associated with recounts because (1) a recount is merely *part* of an election and thus has no need to be mentioned separately in the MCFA, and (2) including recounts within the purview of the MCFA accords with legislative intent. We agree.

A. THE APPROPRIATENESS OF JUDICIAL CONSTRUCTION

We first note that in reviewing statutes, this Court's primary goal is to ascertain and give effect to the

intent of the Legislature. *Adrian School Dist v Michigan Public School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998). If a statute's language is clear and unambiguous, then judicial interpretation is inappropriate. *Id.* If reasonable minds can differ regarding the meaning of a statute, however, judicial construction is warranted. *Id.* In the instant case, we find that reasonable minds can differ regarding whether a monetary gift associated with a recount is encompassed by the term "contribution" in MCL 169.204(1); MSA 4.1703(4)(1). Accordingly, judicial construction is appropriate. *Id.*

### B. A RECOUNT AS PART OF AN ELECTION

We reject petitioner's argument that the exclusion of the term "recount" in the definition of "election" found in MCL 169.205(2); MSA 4.1703(5)(2) means that monetary donations or transfers associated with recounts cannot be deemed "contributions" under the MCFA. The terms listed in MCL 169.205(2); MSA 4.1703(5)(2) refer to different *types* of elections held in the state. Indeed, even a "recall vote" is a type of election, in that it amounts to a determination by the voters of whether an individual should be removed from office. As stated in MCL 168.964; MSA 6.1964, "[t]he procedure governing the election on the question of the recall of an officer shall be the same, so far as possible and unless otherwise provided in this act, as that by which the officer is elected to public office." By contrast, a recount is not a *type* of election held in the state; it is merely a procedure used to correct fraud or mistake in the counting or reporting of votes cast *during* a particular type of election, including a recall vote. See MCL 168.862; MSA 6.1862.

Therefore, a recount, instead of being a *type* of election, is essentially *part* of an election. Accordingly, the Legislature's failure to include the term "recount" on a list of different *types* of elections in the MCFA does not indicate its intent to exclude monetary donations or transfers associated with recounts from the provisions of the MCFA.[1]

## C. A RECOUNT AS "INFLUENCING THE ELECTION OF A CANDIDATE"

We further reject petitioner's argument that monetary donations or transfers associated with recounts are not encompassed by the term "contribution" in MCL 169.204(1); MSA 4.1703(4)(1) because such donations are not made "for the purposes of influencing the nomination or election of a candidate." Indeed, money used to facilitate a recount can directly influence the election of a candidate. As opined by former Attorney General Frank Kelley in 1978, in a case involving a provision of the MCFA that prohibits certain corporate "contributions" made for the purpose of influencing the election of a candidate:

> The purpose of a recount is to determine whether the results of the first count of the ballots should stand or should be changed because of a fraud or mistake in the canvass of the votes or in the returns thereon made by inspectors. 1954 PA 116, § 862, MCLA 168.862; MSA 6.1862. There are costs involved in holding a recount just as there are costs involved in seeking office. These costs may deter

---

[1] Petitioner's reliance on federal law in arguing that expenses associated with a recount are not "contributions" under the MCFA is misplaced, because (1) the statute at issue in the instant case is a state statute and is therefore not governed by federal law; and (2) federal regulations specifically exempt recounts from the provisions of the Federal Campaign Finance Act, see 11 CFR 100.7(20) and 11 CFR 100.8(20), and there are no analogous Michigan regulations.

a person from seeking office, limit a candidate's campaign or influence a candidate who has apparently lost an election by a close margin from seeking a recount unless the candidate in all three instances receives financial assistance. *Thus, a financial contribution to pay for a recount may affect the outcome of an election as much as expenditures made to finance the election campaign.*

It may also be noted that the conduct of a recount frequently involves more than a simple technical procedure encompassing a second count of the votes cast. *Often a recount develops into an adversary administrative proceeding requiring the assistance of specialists in the area of election law, and can also end in extensive litigation. Presumably part of the contribution will be used to finance payment for these services as well.* [OAG, 1977-1978, No 5422, p 762 (December 29, 1978); emphasis added.]

After noting that the Legislature, in order to keep corporations from unduly influencing elections, prohibited corporations, in certain instances, from contributing money to influence the election of candidates, the Attorney General further opined:

Thus, the reasons . . . for sustaining legislation that prohibits corporate contributions to political candidates for their election campaigns apply with equal vigor towards prohibiting contributions to finance the costs of a recount.

\*    \*    \*

. . . [I]nasmuch as a financial contribution to pay the expenses of a recount [is] for the purpose of influencing an election, a corporation is prohibited from making such a contribution to a candidate. [*Id.* at 763]

We recognize that opinions by attorneys general do not constitute binding authority on this Court. See *Macomb Co Prosecutor v Murphy*, 233 Mich App 372, 382; 592 NW2d 745 (1999). Nevertheless, the opinions

can constitute persuasive authority.[2] *Id.* In the instant case, we agree with—and therefore adopt as our own—the Attorney General's reasoning regarding the manner in which donations associated with recounts can influence the election of a candidate. Accordingly, we hold that "financial contribution[s] to pay the expenses of a recount are for the purpose of influencing an election" and are therefore encompassed by the term "contribution" in MCL 169.204(1); MSA 4.1703(4)(1).[3] Petitioner could thus be held liable under MCL 169.244(1); MSA 4.1703(44)(1) if it donated money to the three PACs with the agreement or arrangement that the PACs would then transfer the money to candidate committees to pay the recount-associated expenses of the five candidates.

### D. LEGISLATIVE INTENT

The legislative history of the MCFA supports our holding today. As stated earlier, this Court's primary goal in interpreting statutes is to ascertain and give effect to the intent of the Legislature. *Adrian School Dist, supra* at 332. The legislative analysis regarding the MCFA noted that bill addressed "a crisis of confidence in elected officials among voters today, and the growing influence of 'big money' in increasingly

---

[2] We note that recently-introduced legislation, if it had been adopted, would have rendered the Attorney General's opinions advisory only, as opposed to binding, with respect to state agencies. See HB 4924. This legislation, however, was not adopted by the Legislature, and such opinions therefore remain binding on state agencies.

[3] Although not applicable to the instant case, we note that the rationale for interpreting "contributions" under the MCFA as including donations associated with recounting votes for a candidate applies with equal force to donations associated with recounting votes for a ballot question under MCL 169.204(1); MSA 4.1703(4)(1).

expensive political campaigns." House Legislative Analysis, SB 1570, December 17, 1976, p 1. The "argument for" section of the legislative analysis stated that the bill would "ensure the integrity of Michigan's political campaigns and offices, thereby protecting the interests of the public at large, individual citizens, and candidates for political office," and would "help reduce the undue and hidden influence of 'big money' in politics, and could work to restore public confidence in government." *Id.* at 5. We conclude that including donations associated with recounts as "contributions" under the MCFA accords with the legislative intent to "help reduce the undue and hidden influence of 'big money' in politics" and to "restore public confidence in government." Indeed, our interpretation ensures that organizations attempting to influence elections by funding recounts will be subject to the same contribution limits and disclosure requirements that apply to organizations funding political campaigns.

### III. THE ADMINISTRATIVE DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

Next, respondent argues that the trial court erred in reversing the hearing referee's decision that petitioner violated MCL 169.244(1); MSA 4.1703(44)(1) because the referee's decision was supported by substantial evidence.[4] An administrative agency decision is

---

[4] Respondent also argues that the trial court erred in reversing the referee's decision that petitioner violated an additional section of the MCFA. It is unclear to us whether the trial court's order of reversal encompassed this additional violation. Nevertheless, respondent waived this argument by failing to raise it in its application for leave to appeal. See *O'Connor v Comm'r of Ins*, 236 Mich App 665, 673; 601 NW2d 168 (1999).

reviewed by the circuit court to determine whether the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 354; 564 NW2d 519 (1997). Substantial evidence is any evidence that reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence. See *Korzowski v Pollack Industries*, 213 Mich App 223, 228; 539 NW2d 741 (1995). This Court's review of the circuit court's decision is limited to determining whether the circuit court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). In other words, this Court reviews the circuit court's decision for clear error. *Id.* A decision is clearly erroneous when, "on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id.* at 235.

We conclude that the circuit court clearly erred in concluding that the agency's decision was not supported by substantial evidence. The facts to which petitioner stipulated at the hearing showed that petitioner contributed $20,711.54 to three PACs on July 12, 1994. The stipulated facts additionally showed that on that same day, the three PACs made a total contribution of $20,711.54 to Miller Canfield to help retire the recount-related expenses of the five House candidates. In our opinion, this "money trail" was sufficient to support a reasonable inference, under the "sub-

stantial evidence" standard, that petitioner entered into an agreement or arrangement with the three PACs to pay the candidates' legal bills. We agree with the following findings made by the hearing referee:

> Clearly, the documentation of the money trail evidences some sort of scheme, design, or master plan. The documents show that there was obviously a coordinated effort to move a large amount of [petitioner's] money through the three caucus PACs, resulting in specific payments made on behalf of the five candidate committees which still had outstanding 1992 legal debts, all of which were extinguished on the same day. In other words, a reasonable inference can be drawn from the evidence that a scheme or plan existed.
>
> Further, that the cover letters used by the three caucus PACs when filing their July 1994 triannual reports were virtually identical, is additional circumstantial evidence of a concerted plan to use [petitioner's] money to benefit five particular candidates.

We emphasize the standard of review to be employed by the circuit court: whether the agency's decision was supported by more than a "mere scintilla"—but not necessarily by a preponderance—of the evidence. See *Korzowski, supra* at 228. Black's Law Dictionary (6th ed), p 1345, defines "scintilla" as "the least particle." *Random House Webster's College Dictionary* (1997), p 1159, defines "scintilla" as "a minute particle; spark; [or] trace." Here, the path of the money and the identical cover letters were more than a "minute particle" of evidence that petitioner entered into an unlawful agreement with the three PACs. Indeed, it is not unusual that the identity of the participants in and the goals or objectives of unlawful agreements are founded on circumstantial evidence. See *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). Moreover, even if the cir-

cuit court would have arrived at a contrary conclusion if it had been in the hearing referee's place, the court was nonetheless bound to affirm the referee's decision as long as the decision was sufficiently supported. *Kotmar, Ltd v Liquor Control Comm*, 207 Mich App 687, 689; 525 NW2d 921 (1994). Because the hearing referee's decision that petitioner violated MCL 169.244(1); MSA 4.1703(44)(1) was indeed supported by substantial evidence, we find that the circuit court clearly erred in reversing the referee's decision regarding this violation.[5]

Reversed.

HOEKSTRA, P.J., concurred.

McDONALD, J. (*dissenting*). I respectfully dissent.

Petitioner is accused of violating subsection 44(1) of the Michigan Campaign Finance Act (MCFA), MCL 169.244(1); MSA 4.1703(44)(1), which prohibits making a "contribution" to "another person with the agreement or arrangement that the person receiving the contribution will then transfer that contribution to a particular candidate committee." MCL 169.204(1); MSA 4.1703(4)(1) defines the term "contribution" as, among other things, a "donation of money . . . made for the purpose of influencing the nomination or election of a candidate." The term "election" is defined in MCL 169.205(2); MSA 4.1703(5)(2). I disagree with the majority's interpretation of MCL 169.205(2); MSA 4.1703(5)(2).

---

[5] We reject petitioner's argument that the hearing referee improperly shifted the burden of proof to petitioner during the administrative hearing. The record shows that the hearing referee merely concluded that petitioner failed to rebut the prima facie case that respondent established.

The purpose of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000); *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). The starting point for determining the Legislature's intent is the specific language of the statute. *DiBenedetto, supra* at 402; *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). It is well established that where statutory language is clear and unambiguous, the Legislature is presumed to have intended the meaning it plainly expressed, judicial construction is neither required nor permitted, and the statute must be enforced as written. *DiBenedetto, supra* at 402; *Rowell v Security Steel Processing Co*, 445 Mich 347, 353; 518 NW2d 409 (1994).

The statute at issue in this case provides:

> "Election" means a primary, general, special, or millage election held in this state or a convention or caucus of a political party held in this state to nominate a candidate. Election includes a recall vote. [MCL 169.205(2); MSA 4.1703(5)(2).]

I believe that the statute is clear, does not require judicial interpretation, and must be enforced as written. *DiBenedetto, supra* at 402. The Legislature did not include the term "recount" in its specific and detailed definition of election. Therefore, under the plain language of the statute, a recount is not an "election." Because a recount is not an election, monetary donations associated with recounts cannot be considered "contributions" under the MCFA. Moreover, I disagree with the majority's conclusion that money

donated to facilitate a recount directly influences the election of a candidate. I am not persuaded by the reasoning of the Attorney General opinion cited by the majority. A recount merely ensures an accurate count of votes previously cast. While it may change the outcome of the election where an inaccuracy is corrected during the recount process, a recount does not influence any individual vote.

I would affirm the trial court's decision.