# STATE OF MICHIGAN

# COURT OF APPEALS

AISHA NICHOLS,

        Claimant-Appellant,

v

AUTO CLUB SERVICES, INC.,

        Respondent,

and

DEPARTMENT OF TALENT AND ECONOMIC
DEVELOPMENT/UNEMPLOYMENT
INSURANCE AGENCY,

        Respondent-Appellee.[1]

UNPUBLISHED
November 19, 2015

No. 322231
Wayne Circuit Court
LC No. 14-001823-AE

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Claimant, Aisha Nichols, appeals by leave granted[2] a circuit court order affirming a decision by the Michigan Compensation Appellate Commission ("MCAC"), which affirmed the decision of an administrative law judge ("ALJ") finding that claimant was properly disqualified from receiving unemployment benefits. On appeal, claimant argues that the decisions of the lower tribunals are contrary to law because the tribunals failed to apply, in determining whether claimant's absences constituted disqualifying misconduct, the correct standard for absences that are beyond an employee's control. Claimant also argues that the circuit court erred in concluding that the ALJ's factual findings were supported by competent, material, and

---

[1] Because respondent Auto Club Services, Inc., is not a party in this appeal, we will refer to respondent Department of Talent and Economic Development/Unemployment Insurance Agency as "respondent" in this opinion.

[2] *Nichols v Auto Club Servs, Inc*, unpublished order of the Court of Appeals, entered October 30, 2014 (Docket No. 322231).

substantial evidence. We agree that claimant's disqualification from unemployment benefits was contrary to law and reverse.

## I. FACTUAL BACKGROUND

This case arises from claimant's application for unemployment benefits following her discharge from Auto Club Services, Inc. ("ACS") in March 2013. In October 2012, claimant was hired as a customer sales and service representative at ACS. ACS had a written no-fault attendance policy with no written exceptions, and exceptions were "very rare" in practice. ACS employees received three days off from work every six months, which the employees earned after working for 90 days as long as they were not "on formal discipline."

Between December 3, 2012, and February 25, 2013, claimant received three written discipline notices, two of which were related to being absent from work or leaving work early. The absence giving rise to the last discipline notice was illness-related, and claimant sought medical treatment for her condition.

On February 28, 2013, claimant's vision became blurry and she was unable to see while she was driving to work. This was the second time that she had experienced blurred vision, and she was concerned that she was "having a thyroid storm." After she pulled over to the side of the road, a man assisted her in calling ACS so that she could leave a voicemail message regarding her absence that day. Claimant testified that she stated in the voicemail that (1) the reason for her absence was "personal," (2) she would explain the reason for her absence when she returned, and (3) she would return to work on March 1, 2013.

When claimant returned to work on March 1, 2013, she was discharged from ACS for her absence on February 28, 2013. As she was being discharged, claimant explained to her supervisor that she had not been feeling well and had been unable to see, but she did not provide documentation from her doctor confirming this condition. Following her termination, claimant never gave ACS a doctor's statement or any other medical documentation regarding the circumstances of her medical condition on February 28, 2013. It is unclear from claimant's testimony at the hearing before the ALJ whether she provided ACS with a statement from her doctor regarding her medical condition earlier in February 2013, but claimant did testify that she told her employer that she was not feeling well prior to the time that she was discharged.

Claimant sought unemployment benefits under the Michigan Employment Security Act ("MESA"), MCL 421.1 *et seq*. The State of Michigan Unemployment Bureau disqualified her from receiving unemployment benefits pursuant to MCL 421.29(1)(b) on the basis that claimant was terminated for deliberately disregarding her employer's interest. Claimant subsequently appealed the agency's decision to an ALJ, the MCAC, and the Wayne Circuit Court. At the hearing before the ALJ, the parties stipulated that claimant's absences were related to an illness or medical condition, although the parties dispute on appeal whether the ALJ accepted that stipulation. Regardless, the tribunals below affirmed claimant's disqualification from unemployment benefits.

## II. STANDARDS OF REVIEW

The Michigan Supreme Court recently explained the standard of review applicable to unemployment benefit claims based on Article 6, § 28 of Michigan's 1963 Constitution, which provides the standard of review applicable to a decision of an administrative body; MCL 421.34, which pertains to an appeal from an ALJ to the MCAC; and MCL 421.38, which also pertains to an appeal from the MCAC to a circuit court:

> [A] circuit court must affirm a decision of the ALJ and the MCAC if it conforms to the law, and if competent, material, and substantial evidence supports it. A reviewing court is not at liberty to substitute its own judgment for a decision of the MCAC that is supported with substantial evidence. The Court of Appeals then reviews a circuit court's decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings . . . . [*Hodge v US Security Assoc, Inc*, 497 Mich 189, 193-194; 859 NW2d 683 (2015) (quotation marks and footnotes omitted).]

As such, our review of the lower court's application of the "substantial evidence test"

> is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 555; 847 NW2d 679 (2014) (quotation marks and citations omitted).]

Stated differently, "[s]ubstantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Petrelius v Houghton-Portage Twp Sch*, 281 Mich App 520, 521; 761 NW2d 395 (2008) (quotation marks and citation omitted).

Additionally, we "review questions of statutory interpretation de novo. The primary goal when interpreting a statute is to ascertain and give effect to the Legislature's intent." *Logan*, 304 Mich App at 555 (citations omitted). "If the statutory language is unambiguous, appellate courts presume that the Legislature intended the plainly expressed meaning, and further judicial construction is neither required nor permitted." *Petrelius*, 281 Mich App at 522. This Court has recognized that the MESA "generally is to be liberally construed, [but] those provisions regarding disqualification from benefits are to be construed narrowly." *Korzowski v Pollack Indus*, 213 Mich App 223, 229; 539 NW2d 741 (1995).

## III. APPLICABLE LAW

Pursuant to MCL 421.29(1)(b), an individual is disqualified from receiving benefits under the MESA if he or she "[w]as suspended or discharged for misconduct connected with the individual's work or for intoxication while at work." "Misconduct" is not statutorily defined, but the Michigan Supreme Court adopted the following definition of "misconduct" for purposes of MCL 421.29(1)(b):

["Misconduct"] is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed ["]misconduct["] within the meaning of the statute." [*Carter v Mich Employment Security Comm*, 364 Mich 538, 541; 111 NW2d 817 (1961) (quotation marks and citation omitted).]

"[W]rongdoings which may justify termination of employment under a[n employment] contract do not necessarily qualify as 'misconduct' for purposes of the [MESA]." *Hagenbuch v Plainwell Paper Co, Inc*, 153 Mich App 834, 837-838; 396 NW2d 556 (1986). Similarly, some actions may constitute statutory "misconduct" even if they do not justify termination under the terms of a particular employment contract. *Id.* at 838. As such, a claimant's behavior must be assessed objectively, independent from the requirements of his or her employment contract. *Id.*

"It is well established that excess absenteeism and tardiness for reasons not beyond the employee's control constitutes misconduct under MCL 421.29(1)(b)[.]" *Id.* at 837; see also *Washington v Amway Grand Plaza*, 135 Mich App 652, 658; 354 NW2d 299 (1984) ("An employee's failure to report to work on time may in certain circumstances constitute statutory misconduct."). However,

applying the *Carter*, [364 Mich at 541], definition to the facts of this case, claimant's tardiness or absences cannot support a finding of statutory misconduct unless it is determined that they were without good cause, which could include personal reasons or other reasons beyond claimant's control. *As a matter of law, tardiness or absences resulting from events beyond the employee's control or which are otherwise with good cause cannot be considered conduct in wilful or wanton disregard of the employer's interests. Carter, supra.* This interpretation is consistent with the Court's duty to narrowly construe the disqualification provisions of the act so as to further the remedial policy of the act, which is, in part, to provide benefits to persons unemployed through no fault of their own. [*Washington*, 135 Mich App at 658 (emphasis added).]

In general, "the employer bears the burden of proving [statutory] misconduct," *Korzowski*, 213 Mich App at 229; see also *Washington*, 135 Mich App at 658, but the burden shifts when "the relevant facts are entirely in the hands of the former employee and, for all practical purposes, cannot be discovered by the employer," *Veterans Thrift Stores, Inc v Krause*, 146 Mich App 366, 368; 379 NW2d 495 (1985). "[O]nce the employer raises the issue of disqualification for misconduct under [MCL 421.]29(1)(b) and submits evidence of a number of absences which, if unsupported by sufficient reasons, are so excessive as to constitute misconduct within the contemplation of this section, then the burden is upon the claimant to provide a legitimate explanation for the absences." *Id.*

IV. APPLICATION

The question here is whether claimant's absences constituted a basis for a finding of statutory misconduct, disqualifying her from receiving unemployment benefits. There is no dispute that she violated respondent's no-fault attendance policy and that the violation was the basis for her termination. But, respondent stipulated at the hearing that the reason for claimant's absences was her illness. Thus, the relevant inquiry is whether respondent discharged claimant for "misconduct" as that term is construed under MCL 421.29(1)(b).

The ALJ found that claimant's actions displayed willful disregard of her employer's interest and, therefore, constituted misconduct because her attendance "left much to be desired," claimant had received warnings related to her attendance issues, and she did not advise her employer or submit medical evidence in support of her claim that her last absence was due to a medical condition. The MCAC and the circuit court concluded, and we agree, based on the record, that these factual findings are not clearly erroneous. The record demonstrates that claimant was absent from work or left early from work on multiple occasions. The record also indicates that she received disciplinary write-ups based on her attendance issues. Finally, although claimant testified at the hearing that she told her ACS supervisor, at the time that she was being discharged, that she was absent on February 28, 2013, because she was not feeling well and could not see, the record supports the ALJ's finding that claimant failed to expressly advise her employer, or provide medical documentation specifically indicating, that her last absence was due to a medical condition.[3]

However, even if we assume, without deciding, that the ALJ did not accept the parties' stipulation that all of claimant's absences were due to a medical condition, there is nothing in the record contradicting the evidence proffered by claimant that at least two of her absences, i.e., those occurring on February 18, 2013, and February 28, 2013 (the absence that precipitated her discharge), were due to illness or a medical condition. Likewise, the ALJ did not state any factual findings that discredited claimant's explanation for her attendance issues. Nevertheless, the ALJ concluded that respondent's failure to advise her employer of the reason for her last absence or submit medical evidence following her last absence, in conjunction with her repeated absences and warnings, constituted statutory misconduct. Similarly, in affirming the ALJ's decision, the circuit court focused on the fact that claimant did not provide an explanation for her absences when she was discharged and the fact that claimant did not submit documentation from her doctor concerning her absences until shortly prior to the hearing before the ALJ, reasoning that the ALJ was permitted to consider the explanation offered by claimant at the hearing and the content and timing of the doctor's letter in assessing claimant's credibility. Accordingly, even if the ALJ and the circuit court arguably "stated doubt regarding [claimant's] explanation for her

---

[3] We conclude that the ALJ's factual findings were based on substantial evidence because claimant did not identify a particular medical condition in her conversation with her supervisor when she was terminated. See *Petrelius*, 281 Mich App at 521 ("Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence.").

absences," as respondent contends on appeal, it is evident that neither tribunal made factual findings contrary to claimant's explanation for her absences or specifically found that claimant's explanation was not credible.

As such, it is apparent that the ALJ, the MCAC, and the circuit court failed to recognize that absences for good cause do not constitute "misconduct" for purposes of MCL 421.29(1)(b), even if those absences violate the terms of a claimant's employment under a no-fault attendance policy. See *Hagenbuch*, 153 Mich App at 837-838; *Washington*, 135 Mich App at 658. MCL 421.29(1)(b) provides for a disqualification from unemployment benefits if an individual was "discharged *for* misconduct connected with the individual's work." (Emphasis added.) Thus, under the plain language of the statute, a disqualification for misconduct can only arise from the conduct that served as the basis of an employee's discharge. See *Petrelius*, 281 Mich App at 522. Allowing an individual to be disqualified from unemployment benefits on the basis of conduct that should not impact his or her disqualification contradicts the principle, based on the remedial nature of the MESA, that "provisions regarding disqualification from benefits are to be construed narrowly." *Korzowski*, 213 Mich App at 229.

Here, failing to notify ACS that her final absence was due to a medical condition was not the basis of claimant's discharge. Instead, claimant was discharged because she accumulated excessive absences in violation of ACS's no-fault attendance policy, regardless of the reasons for her absences; a senior employee relations specialist for ACS expressly confirmed that the reasons for claimant's absences did not matter, and that claimant would have been terminated despite any explanation that she provided for her absences. Thus, the only acts properly considered in determining whether claimant committed statutory misconduct for purposes of MCL 421.29(1)(b) are claimant's absences themselves, not whether claimant advised her employer of the reasons for her absences or provided medical documentation to her employer concerning those absences.

The record shows that claimant provided a "legitimate explanation" for at least two of her absences at the hearing before the ALJ, see *Veterans Thrift Stores*, 146 Mich App at 368, which was supported by her testimony at the ALJ hearing, the ACS write-ups included in the record and referenced during the senior employee relations specialist's testimony, and the certification to return to work or school prepared by claimant's doctor concerning claimant's February 18, 2013 absence.[4] In addition to specifically noting that claimant was under her doctor's care on February 18, 2013, the certification provided evidence that claimant had one or more chronic medical conditions related to her thyroid:

> Limitations/Remarks: DX: Toxic Diffuse Goiter and Anxiety disorder. This patient was taken care of by us with a follow up appointment from an ER visit in February. She has a history of Grave's Disease, which can cause numerous fatigue symptoms which may cause her to go to the hospital on occasion. She was able to continue work with no restrictions at this time when released from our

---

[4] We recognize that the certification was prepared several months after claimant's last two absences.

office; however, she has had the same symptoms also in March 2013, which can be caused by her anxiety and her thyroid issues. Aisha's symptoms are heart palpitations, some blurred vision, headaches, and severe dry mouth. Please assist.

It is also apparent from the hearing transcript that claimant did not provide additional testimony regarding the medical reasons for her absences in light of the ALJ's response, i.e., "[W]hy do we need to go into detail?," after the parties offered to stipulate that claimant's medical condition was the reason for her absences.

Except for providing evidence that respondent left early on November 29, 2012, due to a family emergency, respondent did not contradict the medically-related reasons provided by claimant for her absences. Likewise, none of the lower tribunals stated factual findings that contradicted the reasons provided by claimant or concluded that claimant's absences were without good cause. Instead, the lower tribunals focused on claimant's lack of attendance, the fact that claimant received warnings regarding her attendance, and the fact that claimant did not provide an explanation or proffer documentation for her absences until after she was terminated. However, these facts do not establish, on their own, that claimant's absences constituted statutory misconduct. Again, a "claimant's tardiness or absences cannot support a finding of statutory misconduct *unless it is determined that they were without good cause*, which could include personal reasons or other reasons beyond claimant's control." *Washington*, 135 Mich App at 658 (emphasis added). Accordingly, because the lower tribunals did not determine that claimant's absences were without good cause, the ALJ, the MCAC, and the circuit court erred in concluding that claimant's absences constituted statutory misconduct that justified a disqualification from unemployment benefits under MCL 421.29(1)(b). *Hodge*, 497 Mich at 193-194; *Logan*, 304 Mich App at 554-555.

## V. CONCLUSION

The lower tribunals did not determine whether claimant's absences were without good cause in light of her alleged illness or medical condition. Accordingly, without such a factual determination, claimant was wrongfully disqualified from receiving unemployment benefits under MCL 421.29(1)(b).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan

-7-