*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHRYN MACEWEN CONTI,

      Claimant-Appellee,

v

DOMESTIC VIOLENCE PROJECT, INC.,

      Appellee,

and

UNEMPLOYMENT INSURANCE AGENCY,

      Appellant.

UNPUBLISHED
September 24, 2019

No. 343180
Washtenaw Circuit Court
LC No. 17-000783-AV

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Appellant, Michigan Unemployment Insurance Agency (UIA), appeals by leave granted[1] an opinion and order of the circuit court finding that claimant, Kathryn MacEwen Conti, was eligible for employment benefits. The circuit court's order reversed the decision of the Michigan Compensation Appellate Commission (MCAC) and an administrative law judge (ALJ), concluding that the MCAC and the ALJ misapplied MCL 421.29(5). We agree with the circuit court and affirm its opinion and order.

## I. FACTUAL BACKGROUND

Claimant began working for Domestic Violence Project, Inc. (Domestic Violence Project), in May 2014. On July 18, 2016, Ezbake Technologies (Ezbake) offered claimant

---

[1] *Conti v Domestic Violence Project, Inc*, unpublished order of the Court of Appeals, entered October 2, 2018 (Docket No. 343180).

permanent full-time employment, and claimant accepted the offer. Claimant provided Domestic Violence Project with a resignation letter on July 20, 2016, stating that she was leaving Domestic Violence Project for personal reasons, and that her resignation would be effective on August 5, 2016. Despite the effective date of her resignation, claimant's actual last day in the office was August 2, 2016. Between the effective date of her resignation and her last day in the office—on August 4, 2016—claimant received an employment offer from Court Innovations and subsequently withdrew her acceptance of Ezbake's offer and accepted the offer from Court Innovations. Claimant worked for Court Innovations from September 2016 until she was discharged in January 2017. Claimant then applied for unemployment benefits with the UIA.

The UIA issued a notice of determination and concluded that claimant was disqualified from receiving unemployment benefits under MCL 421.29(1)(a) because she voluntarily left her employment with Domestic Violence Project. Claimant contested the notice of determination, and the UIA subsequently issued a notice of redetermination that reached the same conclusion. Claimant again contested the determination, contending that, although individuals that voluntarily leave their employers are generally not entitled to unemployment benefits, an exception to that rule—found in MCL 421.29(5)—applied because claimant left Domestic Violence Project to pursue another full-time job.

After holding a hearing, an ALJ ruled that the exception did not apply to claimant because MCL 421.29(5) only applies where a person leaves one employer for another *and* actually provides services to that employer. The ALJ found that, in claimant's case, while she left her job at Domestic Violence Project for another opportunity at Ezbake, claimant ultimately withdrew her acceptance and did not provide services to Ezbake. Additionally, although claimant did provide services to Court Innovations, her offer from Court Innovations did not come until after claimant's last day in the office, and thus, it could not be said that claimant left Domestic Violence Project for the job at Court Innovations. The ALJ affirmed the UIA's determination that claimant was disqualified from receiving unemployment benefits, and claimant then appealed the ALJ's decision to the MCAC. The MCAC affirmed the ALJ's decision, determining that the ALJ's findings of fact were supported by the record and that the ALJ properly applied the law.

Claimant thereafter appealed the MCAC decision to the Washtenaw Circuit Court. In its written opinion and order, the circuit court held that, under the required liberal construction of MCL 421.29(5), claimant was not "formally separated" from Domestic Violence Project until August 5, 2016. Accordingly, for the purposes of claimant's eligibility for unemployment benefits, it was sufficient that claimant accepted a full-time position with Court Innovations on August 4, 2016, and thereafter performed services for that employer. The circuit court also determined that the plain language of MCL 421.29(5) did not require that the employer whose offer predicates an individual's resignation be the same employer for which an individual ultimately accepts and performs work.[2] Accordingly, the circuit court reversed the decision of

---

[2] The court noted, "[t]here is no specific language in [MCL 421.29(5)] that nullifies application of the exception where an employee has multiple job offers and resigns to accept one of them."

the MCAC and ALJ, determining that the exception for disqualification from benefits found in MCL 421.29(5) applied.

The UIA argues on appeal that the circuit court did not apply the correct legal principles and misapplied the substantial-evidence test. We disagree.

## II. ANALYSIS

"This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial[-]evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made. *Id*. Additionally, this Court reviews de novo questions of statutory interpretation. *McQueer v Perfect Fence Co*, 502 Mich 276, 285-286; 917 NW2d 584 (2018).

A circuit court reviews an administrative decision under Const 1963, art 6, § 28 and MCL 24.306. *Dignan v Mich Pub Sch Employees Retirement Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002). Const 1963, art 6, § 28 provides:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

" 'Substantial' means evidence that a reasoning mind would accept as sufficient to support a conclusion." *Dignan*, 253 Mich App at 576.

The Michigan Employment Security Act (MESA), MCL 421.1 *et seq*., serves a remedial purpose by providing benefits to persons who are involuntarily unemployed. *Korzowski v Pollack Indus*, 213 Mich App 223, 228-229; 539 NW2d 741 (1995). Although MESA is generally to be construed liberally, disqualification provisions are to be construed narrowly. *Id*. at 229. MCL 421.29 provides, in relevant part:

> (1) Except as provided in subsection (5), an individual is disqualified from receiving benefits if he or she:
>
> (a) Left work voluntarily without good cause attributable to the employer or employing unit. An individual who left work is presumed to have left work voluntarily without good cause attributable to the employer or employing unit . . . .

* * *

(5) If an individual leaves work to accept permanent full-time work with another employer or to accept a referral to another employer from the individual's union hiring hall and performs services for that employer, or if an individual leaves work to accept a recall from a former employer, all of the following apply:

(a) Subsection (1) does not apply.

Ordinarily, a claimant who leaves his or her employment without good cause attributable to his or her employer is disqualified from receiving unemployment benefits. MCL 421.29(1)(a); *Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 557; 847 NW2d 679 (2014). However, a claimant who voluntarily leaves his or her employment may qualify for unemployment benefits if he or she leaves work to accept permanent full-time work with another employer and subsequently provides services to that employer. MCL 421.29(5); *Logan*, 304 Mich App at 557.

The UIA's primary argument is that MCL 421.29(5) requires individuals that leave employment for other full-time opportunities perform services for the particular employer for which they originally left. The UIA contends that, because claimant left Domestic Violence Project for a job with Ezbake but subsequently never performed work at Ezbake, instead accepting a job at Court Innovations and performing work there, claimant is ineligible for benefits. However, we need not address whether MCL 421.29(5) prohibits benefits under those circumstances because the UIA's argument is premised on the idea that claimant left her job at Domestic Violence Project on August 2, 2016, when in fact, she left on August 5, 2016.

Because claimant accepted her position with Court Innovations on August 4, 2016, the true issue in this case was the meaning of "leaves" within MCL 421.29(5). The ALJ implicitly found that claimant "left" Domestic Violence Project on August 2, 2016, because that was claimant's "last day in the office." The circuit court disagreed, concluding that, as a matter of law, a liberal construction of MCL 421.29(5) provides that claimant did not "leave" Domestic Violence Project until the "effective date of her resignation"—on August 5, 2016. Because claimant did not officially leave Domestic Violence Project until she had already accepted full-time employment with Court Innovations, and because claimant subsequently performed services for Court Innovations, the circuit court determined that plaintiff was eligible for benefits. We agree with the circuit court's reasoning.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). The Legislature is presumed to have intended the meaning it plainly expressed. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). Clear statutory language must be enforced as written. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012). "When a term or phrase is not defined in a statute, the court may consult a dictionary to ascertain its commonly accepted meaning." *Motycka v Gen Motors Corp*, 257 Mich App 578, 581-582; 669 NW2d 292 (2003).

As stated earlier, MCL 421.29(1)(a) provides that "an individual is disqualified from receiving benefits if he or she left work voluntarily without good cause attributable to the

employer or employing unit." MCL 421.29(5) provides, however, that Subsection(1)(a) does not apply "[i]f an individual leaves work to accept permanent full-time work with another employer . . . and performs services for that employer . . . ." The common definition of "leave" means "to go away from: depart; desert, abandon; to terminate association with; withdraw from." *Merriam-Webster's Collegiate Dictionary* (11th ed). "To leave" has also been defined as "[t]o depart; voluntarily go away; [or to] quit (a place)." *Black's Law Dictionary* (11th ed). We find no legal support for the ALJ, MCAC, and UIA's contention that claimant left her employment within the meaning of the statute at the moment she stopped performing services as opposed to the moment that was designated as her official date of resignation.

Claimant provided a letter to Domestic Violence Project indicating that her resignation would be effective August 5, 2016, and nothing in the record suggests that claimant ever intended to change that date. Moreover, at the hearing before the ALJ, testimony from a representative of Domestic Violence Project, Barbara Niess-May, strongly suggested that the company understood claimant to have been employed through August 5, 2016:

> *Q.* And the last day—and the last day that [claimant] was actually on the job working for the company?
>
> *A.* The last day paid was August 5, 2016.
>
>         \*   \*   \*
>
> *Q.* Ms. Niess-May, is it accurate to say that [claimant] was—her last day of actual work was [not] August 5, it was August 2, correct?
>
> *A.* August 2 was the last day in the office and beyond that, because there wasn't—things had been wrapped up, we decided to go ahead and pay through that Friday as a salaried employee.

The representative even went so far as to note that claimant initially offered to stay with Domestic Violence Project through August 31, 2016, but that Domestic Violence Project chose August 5, 2016, allowing claimant to commence terminal paid leave thereafter. It is also worth noting that the ALJ explicitly found that, although claimant "did not perform services for [Domestic Violence Project] after August 2, 2016," "[t]he employer considered [claimant] *employed* through August 5, 2016 because the employer paid" claimant through that date. (Emphasis added.)

There was simply no evidence to suggest anything other than the fact that, although claimant did not perform services after August 2, she was still employed with Domestic Violence Project through August 5, 2016. Given that the ALJ seemed to agree with that fact, claimant's association with the company did not terminate until that date, and as a matter of law, a person has not "left" their employment under MCL 421.29(5) if that person is still, in fact, employed. Accordingly, claimant "left" her job at Domestic Violence Project on the effective date of her resignation—August 5, 2016—after having accepted full-time employment with Court Innovations on August 4, 2016. Thereafter, claimant performed services for Court Innovations, and accordingly, the circuit court was correct that MCL 421.29(5) applied. The ALJ and the MCAC misapplied the law in rendering their decisions.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood